UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH HARTFIELD

       Plaintiff,              CIVIL ACTION NO. 06-CV-11575-DT

    vs.                        DISTRICT JUDGE VICTORIA A. ROBERTS

COMMISSIONER OF         MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

       Defendant.
_____/

REPORT AND RECOMMENDATION

I.      RECOMMENDATION

This Court recommends that Plaintiff's Motion for Summary Judgment be **GRANTED IN PART** (Docket # 11), that Defendant's Motion for Summary Judgment be **DENIED** (Docket # 15), and that the case be remanded for further fact-finding consistent with this Report.

II.     PROCEDURAL HISTORY

This is an action for judicial review of the final decision by the Commissioner of Social Security that the Plaintiff was not "disabled" for purposes of the Social Security Act. 42 U.S.C. §§ 423, 1382. The issue for review is whether the Commissioner's decision is supported by substantial evidence.

Plaintiff Joseph Hartfield filed an application for Disability Insurance Benefits (DIB) on April 11, 2003. (Tr. 48-50). He alleged he had been disabled since July 6, 2003 due to shoulder,

back and feet pain. (Tr. 48-50, 57, 139). Plaintiff's claims were initially denied by notice on September 12, 2003. (Tr. 24-29). Plaintiff sought a review hearing before an Administrative Law Judge (ALJ). (Tr. 32). A hearing took place before ALJ Richard Wurdeman on June 22, 2005. (Tr. 136-57). Plaintiff was represented by an attorney at the hearing. (Tr. 31.46-47, 138). The ALJ denied Plaintiff's claims in an opinion issued on August 30, 2005. (Tr. 19-23). The Appeals Council denied review of the ALJ's decision on March 3, 2006 and the ALJ's decision is now the final decision of the Commissioner. (Tr. 5-7). Plaintiff appealed the denial of his claim to this Court and both parties have filed motions for summary judgment.

### III. MEDICAL HISTORY

In 2001 Plaintiff underwent arthroscopic surgery to repair a partial rotator cuff tear in his left shoulder. (Tr. 98). In March 2002 Plaintiff had a check-up with Dr. James E. Ware, an orthopedic surgeon. Plaintiff complained of pain in his shoulders, especially his right shoulder. An examination showed Plaintiff had a full range of active motion of both shoulders, no signs of muscle atrophy, and some pain upon resisted strength testing of his bilateral rotator cuffs. (Tr. 93). Both arms were neurovascularly intact. *Id.* Dr. Ware recommended that Plaintiff return to work that involved no lifting greater than 20 pounds and no overhead reaching. (Tr. 93, 104).

In April 2002 Dr. Ware reported that he saw Plaintiff for a check-up regarding his right shoulder pain. Dr. Ware noted that he reviewed a functional capacity evaluation done for Plaintiff which recommended that Plaintiff's work require "limited repetitive lifting of anything

greater than 25 pounds" and "limited . . . repetitive overhead lifting greater than 15 pounds". Furthermore, the evaluation noted that Plaintiff "should be able to undergo frequent positional changes with his job." (Tr. 91). Dr. Ware commented that he would write Plaintiff up for a return to work with these restrictions but that he did not believe he could continue him off work because Plaintiff was not undergoing any treatment for his shoulder. *Id.*

In October 2002 Dr. Jeffrey Levin, a neurologist, examined Plaintiff. Dr. Levin reported that Plaintiff complained of low back pain with radicular symptoms into his left leg. Upon examination of Plaintiff's lower extremities, Dr. Levin noted that Plaintiff had "some mild pain with straight leg raising" and "some mild weakness with dorsiflexion bilaterally." No sensory or reflex changes were noted. (Tr. 95-96). He also noted his impression that Plaintiff had L5 radiculopathy and suggested that Plaintiff have an MRI taken of his lumbar spine. (Tr. 96). Dr. Levin thereafter recommended that Plaintiff be restricted from lifting more than 15 pounds with no repetitive lifting above the shoulder. (Tr. 100, 102). Plaintiff was seen again by Dr. Levin in March 2003. (Tr. 94). He noted that the examination findings were unchanged and he prescribed Naprosyn and Flexeril. *Id.* Dr. Levin also noted that Plaintiff had not had the MRI taken of his lumbar spine due to a reported lack of insurance. *Id.*

Dr. Neil Friedman performed a consultative examination of Plaintiff in August 2003. Dr. Friedman reported that a visual inspection of Plaintiff's spine revealed no obvious gross deformities, asymmetry, or atrophy. (Tr. 106). Active cervical extension to 20 degrees produced complaints of slight pain localized to the posterior neck but active cervical flexion was full. *Id.*

Cervical rotation to 50 degrees both to the right and left produced a complaint of a crunching in the neck and pain in the right posterior neck muscles. Lateral cervical flexion to 20 degrees, both to the right and left, produced complaints of tightness in the posterior neck muscles. *Id.* Active lumbar spinal flexion to 60 degrees and extension to 20 degrees produced complaints of tightness, localized to the Plaintiff's lower back muscles. Lateral spinal flexion was full and reportedly pain free on both the right and left side. (Tr. 107).

Dr. Friedman observed that Plaintiff could sit and stand without limitation. (Tr. 108). He also noted that Plaintiff had a negative straight leg raising test, brisk and symmetric leg reflexes, and a full range of motion in his lower extremities. (Tr. 107). Dr. Friedman further commented that Plaintiff was seen using a cane to walk but that there was no clinical evidence indicating that he needed to use a cane. Furthermore, Dr. Friedman observed that Plaintiff's gait was slow but otherwise normal with the cane, that Plaintiff could walk without the cane around the office, and that he could walk on his toes. *Id.*

A state agency physician completed a RFC Assessment on Plaintiff based upon a review of his medical records. The physician concluded that Plaintiff could perform light work and could stand and/or walk or sit for about 6 hours out of an 8-hour workday with normal breaks. (Tr. 113).

IV.  **HEARING TESTIMONY**

    A.  **Plaintiff's Testimony**

Plaintiff was 51 years of age when he appeared for the hearing. (Tr. 140). He

testified that he had a graduated from high school. (Tr. 143). Plaintiff stated that he had injured his back in 2002 while working as a roofer. (Tr. 141). Thereafter, he experienced pain in his lower back, shoulders, neck and left foot. *Id.* Plaintiff also told the ALJ that he has a lot of problems with his asthma, which comes and goes, and is worsened by certain weather and mold. (Tr. 147). He uses an inhalers for his asthma, which helps. (Tr. 144-45). Plaintiff also stated that he takes Vicodin ES for his pain, which also helps, but that he takes it at night since it causes grogginess. (Tr. 145-46). Plaintiff further testified that he tries to do water exercises in the tub to help with his pain. (Tr. 148).

When asked about his specific exertional limitations, Plaintiff testified that he: (1) can stand or walk for about 1 hour before needing to rest; (2) can lift no more than 10 pounds due to pain in his back and left shoulder; (3) has problems pushing, pulling, and reaching overhead with both arms; (4) sometimes has difficulty bending at the waist; and (5) sometimes has problems using hands to open things since his left shoulder surgery. (Tr. 143, 144, 145). Plaintiff also testified that he is left-handed. (Tr. 143).

When asked about his daily activities, Plaintiff testified that his wife grocery shops, his son does the yard work, and he helps his wife with the housework. (Tr. 143-44). Plaintiff stated that he has a driver's license and drives two to three times a day, primarily to attend to his ministry work or school. (Tr. 146). He spends about 1 - 2 hours or more attending to his ministry work and he goes to school for a two-week course for about 4 - 5 hours per session wherein he sits and listens to lectures. (Tr. 146, 148). He further told the

ALJ that he had not taken a long road trip in awhile but that if he did, he would need to stop to rest. (Tr. 147).

    B.    <u>Vocational Expert's Testimony</u>

Mary Williams, a certified rehabilitation counselor, testified as a vocational expert at the hearing. (Tr. 35, 149-57). The ALJ asked Ms. Williams about the type and number of jobs available in the regional and national economy for a hypothetical individual of Plaintiff's age, education, and work experience[1] who has the residual functional capacity ("RFC") to perform light, unskilled work that does not require: (1) overhead work; (2) lifting more than 15 pounds; (3) forceful gripping with the left, dominant hand; and (4) standing or walking for more than one hour continuously. Additionally, the work must be in a clean air environment with no extremes of hot or cold. (Tr. 153). Ms. Williams testified that there are security guard positions numbering 10,400 in Michigan's lower peninsula and 200,000 such positions nationally. (Tr. 154). However, Ms. Williams also testified that if the same hypothetical individual also required a job that would accommodate a sit/stand at-will option then that individual could perform sedentary, but not light, work. (Tr. 155).

## IV.    <u>THE ALJ'S FINDINGS</u>

The ALJ concluded that Plaintiff was insured for disability benefits through December 31, 2008 and that he had not engaged in substantial gainful activity since the

---

[1] Ms. Williams also testified that, as reported, Plaintiff's prior job as a maintenance worker is categorized as medium, unskilled work and his job as a roofer is classified as unskilled, heavy work. (Tr. 150-52).

alleged onset date of July 6, 2003. (Tr. 22). He further found that Plaintiff's impairments of lumbar spine degenerative disc disease, asthma, and history of rotator cuff tear status post surgical repair are severe but that they do not meet or medically equal any listed severe impairments. *Id.* The ALJ also surmised that Plaintiff could not perform his past relevant work but that he retained the RFC to perform a range of unskilled, light work. *Id.* Plaintiff's claim was denied because the ALJ determined that there were a significant number of other jobs available in the national and regional economy for a person of Plaintiff's age, educational level, work history, and RFC. *Id.* Furthermore, the ALJ determined that Plaintiff's subjective complaints were not totally credible. *Id.*

V.  **LAW AND ANALYSIS**

   A.  **STANDARD OF REVIEW**

Title 42 U.S.C. § 405(g) gives this Court jurisdiction to review the Commissioner's decisions. Judicial review of those decisions is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson,* 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)). It is not the function of this court to try cases *de novo*, resolve conflicts in the evidence, or

decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

In determining whether substantial evidence supports the Commissioner's decision, the Court must examine the administrative record as a whole. *Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even where substantial evidence also supports the opposite conclusion and the reviewing court would decide the matter differently. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

### B.  FRAMEWORK OF SOCIAL SECURITY DISABILITY DETERMINATIONS

The Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff had to show that:

(1) he was not presently engaged in substantial gainful employment; and

(2) he suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) he did not have the residual functional capacity (RFC) to perform his relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(e); 20 C.F.R. § 416.920(a)-(e). If Plaintiff's impairments prevented him from doing his past work, the Commissioner would, at step five, consider his RFC, age, education and past work experience to determine if he could perform other work. If not, he would be deemed disabled. 20 C.F.R. § 404.1520(f). The Commissioner has the burden of proof

only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391.

    C.    <u>**Arguments**</u>

The ALJ determined that Plaintiff has the RFC to work with certain restrictions. The ALJ's RFC determination is set forth below:

> The claimant has the residual functional capacity for light work that does not require any overhead reaching, forceful gripping with the left dominant hand, lifting more than 15 pounds, or any exposure to hot or cold temperatures.

(Tr. 22). The ALJ posed a hypothetical question to the VE based upon this RFC determination with an additional limitation: that the job not require Plaintiff to walk more than 1 hour continuously at any one given time. (Tr. 153). In response, the VE testified that a person of Plaintiff's age, education, and work history, with the limitations included in the hypothetical was capable of working as a security guard and that there existed 10,400 such jobs in Michigan's lower peninsula and 200,000 such positions nationally. (Tr. 154). Based upon this testimony, the ALJ concluded that Plaintiff was not disabled.

Where an ALJ poses an accurate hypothetical to VE, and the VE testifies that a person with the described limitations is capable of performing work that exists in significant numbers in the national economy, such testimony is sufficient to support a finding that the claimant is not disabled. *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

Plaintiff contends that the hypothetical posed by the ALJ was inaccurate and, therefore, that the VE's testimony does not support the ALJ's disability determination. Specifically, Plaintiff claims that the ALJ ignored the restriction given by Dr. Ware in 2002 that Plaintiff "should be able to undergo frequent positional changes with his job." Plaintiff argues that Dr. Ware's opinion necessarily equates to a restriction that Plaintiff can only perform jobs that provide for an option to sit/stand at will. Plaintiff contends that if the ALJ had properly incorporated the at-will sit/stand option then, based upon the VE's testimony, the ALJ would have had to find Plaintiff capable of only performing sedentary work, thus directing a finding of disability under section 201.12 of the Medical-Vocational Guidelines.

The Commissioner of Social Security generally gives "more weight to opinions from [the claimant's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s)." 20 C.F.R. § 404.1527(d)(2). The Commissioner will give the opinion of a treating physician controlling weight, if the opinion is well-supported and not inconsistent with the other substantial evidence. *Id.* When the opinion of the treating physician is not given controlling weight, factors such as the length of the treatment relationship, nature and extent of the treatment relationship, and the supportability of the physician's opinion will be considered in determining how much weight to afford the opinion. *Id.* The regulations also require the ALJ to give "good reasons in our notice of determination or decision for the

weight ... give[n] your treating source's opinion." 20 C.F.R. § 404.1527(d)(2); see also SSR 96-5p.

The Sixth Circuit has noted that the ALJ must provide good reasons for the weight given a treating source's opinion. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004). The *Wilson* Court reversed and remanded a denial of benefits, even though "substantial evidence otherwise supports the decision of the Commissioner," because the ALJ failed to give good reasons for discounting the opinion of the claimant's treating physician. *Wilson*, 378 F.3d at 543-46. As the *Wilson* court commented, "[a] court cannot excuse the denial of a mandatory procedural protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely." *Id.* at 546.

In his written opinion, the ALJ did not completely ignore Dr. Ware's opinion. Indeed, the ALJ references Dr. Ware's reports and discusses certain portions of them, including Dr. Ware's advice that Plaintiff not lift more than 20 pounds or work overhead. (Tr. 20, 21). However, the ALJ did not specifically discuss Dr. Ware's opinion that Plaintiff be released Plaintiff back to work with the restriction that Plaintiff "should be able to undergo frequent positional changes with his job." Having failed to do so, it is clear that the ALJ did not comply with the *Wilson* ruling, 20 C.F.R. § 404.1527(d)(2), or SSR 96-5p.

Defendant acknowledges that Dr. Ware is a treating physician and that the ALJ did not discuss Dr. Ware's opinion regarding Plaintiff's need to frequently change positions

while working. Defendant asserts, however, that the ALJ's omission is harmless because Dr. Ware's opinion is consistent with the ALJ's RFC determination that Plaintiff not be required to stand or walk for more than one continuous hour at a time and is otherwise not supported by the objective medical evidence or by Plaintiff's other physicians.

The *Wilson* court did not decide whether a de minimis violation of the § 1527(d)(2) procedural requirement may qualify as harmless error, but noted instances it which it might: 1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it"; 2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion"; or 3) "where the Commissioner has met the goal of § 1527(d)(2)--the provision of the procedural safeguard of reasons--even though she has not complied with the terms of the regulation." *Id.* at 547.

Defendant contends that the ALJ did not commit reversible error because his RFC finding (restricting Plaintiff to work that does not require him to stand or walk for more than one continuous hour at a time) is substantially consistent with Dr. Ware's opinion (restricting Plaintiff to work that permits him to frequently change positions). The Court notes that although the VE testimony relied upon by the ALJ to support his non-disability finding is based upon the restriction referred to by Defendant, the ALJ did not ultimately adopt that restriction into his RFC finding.[2] In any event, the Court concludes that the

---

[2] To the extent Plaintiff argues it was reversible error for the ALJ to rely upon VE testimony that was based upon a more restrictive limitations than those ultimately found by the ALJ, the Court rejects this argument. If anything, the pool of available jobs would

restriction imposed by the ALJ in his hypothetical to the VE is not sufficiently consistent with Dr. Ware's limitation.  Simply because the security positions listed by the VE do not demand that Plaintiff walk or stand for more than one hour at a time does not necessarily mean that Plaintiff can frequently alternate between the sitting and standing positions.  For example, a job might require Plaintiff to walk for no more than one hour but then require him to remain seated, aside from normal breaks, for the duration of the day.

Furthermore, it is clear from the VE's testimony that an at-will sit/stand option is conceptually different than the hypothetical limitation posed to the VE because the VE testified that such an additional limitation would preclude the light work about which she testified.  If the two limitations were consistent, one would expect the VE's testimony to remain unchanged.  The Court notes, however, that because the ALJ did not discuss Dr. Ware's opinion about Plaintiff's need to frequently change positions, he subsequently did not address Plaintiff's contention, which was made during the hearing, that an individual's need to frequently change positions necessarily equates to a need for an at-will sit/stand option.  This, however, is a conflict that the ALJ, not this Court, would need to resolve.  *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003).

Similarly, despite Defendant's urging, it is not this Court's function to remedy the ALJ's error by independently searching the record to find substantial evidence to support his

---

expand, rather than shrink for a claimant with fewer restrictions.  Therefore, the reliability of the VE's testimony in this regard is not undermined.

ultimate decision. *Wilson*, 378 F.3d at 546. Thus, the Court may not find that the ALJ's error was harmless simply because other physicians did not find the same limitation as Dr. Ware or because there is medical evidence which would have supported the ALJ's rejection of Dr. Ware's opinion. *See e.g., Smith v. Heckler*, 760 F.2d 184, 187 (8th Cir. 1985); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

This is also not a case in which there is no evidence whatsoever of Plaintiff's back pain. The ALJ concluded that Plaintiff suffers from lumbar spine degenerative disc disease, which could reasonably be expected to produce the symptoms, including pain, of which Plaintiff complained.[3] (Tr. 20, 21). Plaintiff has been prescribed medication to treat his back pain. There is also medical evidence of mild pain with a straight leg raising test in October 2002 and examination findings indicating some degree of limitation when flexing and extending Plaintiff's spine in August 2003.

## RECOMMENDATION

The Commissioner's decision is not supported by substantial evidence. Defendant's Motion for Summary Judgment (Docket # 15) should be **DENIED**. Plaintiff's Motion for Summary Judgment (Docket # 11) should be **GRANTED IN PART**. The Court recommends that the case be **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C.

---

[3] The ALJ ultimately decided that Plaintiff's testimony about the persistence, intensity and limiting effects of the pain were not credible, in part, because no physician had imposed restrictions other than those related to lifting. The problem with this finding is, of course, that Dr. Ware had imposed further restrictions.

§ 405(g)[4] for the Commissioner to: (1) address the opinion of Dr. Ware regarding Plaintiff's need to frequently changes positions; (2) if necessary, re-evaluate Plaintiff's RFC to perform a limited range of light work; and (3) conduct any further step five analysis if otherwise appropriate.

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary*, 931 F.2d 390, 401 (6th Cir. 1991). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

---

[4] "[S]entence four of § 405(g) contemplates the type of remand involved in the present case-a remand after a final decision by the district court reversing the denial of benefits by the Secretary in order to correct an error by the Secretary in applying the regulations even if the rehearing to correct the error requires the taking of additional evidence. *Sullivan v. Finkelstein*, 496 U.S. 617, 625-26, 110 S.Ct. 2658, 2664, 110 L.Ed.2d 563 (1990) (sentence four provides appropriate relief when evidence on record is insufficient to support the Secretary's conclusions and further fact-finding is necessary)." *Faucher v. Sec. of Health and Human Services*, 17 F.3d 171, 174 (6th Cir.1994)

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: December 14, 2006            s/ Mona K. Majzoub
                                              MONA K. MAJZOUB
                                              UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: December 14, 2006            s/ Lisa C. Bartlett
                                              Courtroom Deputy